■ ELIZABETH CLARK, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 66687.)—Levine, J.

Claimant was seriously injured in a one-car accident which occurred in the early morning hours of September 25, 1981 when her vehicle left the highway at a curve on State Route 41 in Cortland County, traveled some 200 feet and struck the ramp-end of a guardrail. Upon impact, the ramp-end piece of the guardrail fractured and the exposed horizontal member of the rail impaled the vehicle through the passenger compartment, causing severe lacerations and fractures to the lower half of claimant's body.

The Court of Claims rejected claimant's theory of recovery that her deviation from the roadway was caused by improper road markings at the curve, finding instead that the "real culprit" for her veering off the road was the impairment of her ability to drive by consumption of alcohol. The record is

amply sufficient to support that finding, including claimant's admission of patronizing several bars before embarking on her journey, the testimony of observers concerning her intoxicated state and the result of a blood test taken at the hospital where she was treated after the accident, establishing her blood alcohol level at .14%. The court, however, accepted claimant's alternative theory of liability that the State was negligent in the fabrication of the guardrail where the ramp-end met the horizontal rail, in failing to inspect for defects and in failing to relocate the ramp-end a safer distance from the edge of the road when modifications in the guardrail system were made subsequent to original installation.

Despite having attributed negligence to claimant in driving off the highway, the Court of Claims held the State 100% liable for claimant's injuries and awarded damages of $522,318.35. The failure to reduce the award by allocating part of claimant's damages to her own fault pursuant to New York's comparative negligence statute (CPLR 1411) was based upon the testimony of claimant's expert that, had the guardrail been properly constructed and maintained, claimant would have only sustained minor injuries. Hence, the court reasoned, "the state's negligence was *the* substantial factor in aggravating [claimant's] injuries * * * and not any culpability on the claimant's part" (emphasis in original).

The State, conceding sufficient evidentiary support in the record for the imposition of some liability in negligence against it, appeals solely from the failure of the court to apply an allocation of comparative fault to the damage award. We agree with the State that the damages should have been reduced on the basis of comparative negligence. Undisputably, claimant's negligent departure from the highway was a cause in fact of the impact with the guardrail and her resultant injuries. There was only a single accident and a single set of injuries resulting therefrom. "In general, entire liability is imposed only where there is no factual basis for holding that one wrongdoer's conduct *was not a cause in fact* of part of the harm" (Prosser and Keeton, Torts § 52, at 346 [5th ed] [emphasis supplied]). We do not read *Arbegast v Board of Educ.* (65 NY2d 161), relied upon by the Court of Claims in its decision, as inconsistent with the foregoing. Although the court in *Arbegast* applied a "comparative causation" rationale to the doctrine of comparative negligence *(supra,* at p 168), it did so in reliance upon a Judicial Conference Report and stated that, "for the [comparative negligence] statute to operate, plaintiff's conduct must be a *cause in fact* of his or her injury. When it

is, the statute 'requires that the culpable conduct attributable to the decedent or claimant be compared with the total culpable conduct which caused the damages' " *(supra,* at pp 168-169, quoting 1976 Judicial Conference Report, at 242 [emphasis supplied]).

Without the confluence of the State's negligence and claimant's negligence in operating her vehicle while intoxicated and failing to negotiate a curve at a speed sufficient to carry her car 200 feet along the shoulder and an additional 150 feet after impact with the guardrail until it came in contact with a bridge abutment, the accident and claimant's unfortunate injuries would not have occurred. Each party's negligence was a substantial factor and, therefore, a proximate cause of the ultimate harm. That claimant's injuries would have been minimal but for the State's negligence, as found by the Court of Claims, is of no moment. It was only through claimant's negligence that she was placed in a position to be harmed by the negligence of the State. This was sufficient for comparative negligence to apply, even if claimant would not have suffered *any* harm, but for the State's fault *(see, Ellison v New York City Tr. Auth.,* 63 NY2d 1029, *revg* 98 AD2d 659; *Bottalico v State of New York,* 87 AD2d 807, *affd* 59 NY2d 302; *Terry v State of New York,* 79 AD2d 1069).

We exercise our fact-finding authority in nonjury cases *(see, Wood v State v New York,* 112 AD2d 612, 614-615) to allocate responsibility on the basis of a comparison of the respective culpable conduct of each party to the total culpable conduct which caused the damages (CPLR 1411; *Arbegast v Board of Educ., supra),* considering each party's wrongful conduct as well as the contribution of such conduct to the severity of claimant's injuries, and, on that basis, apportion liability at 60% on the part of claimant and 40% on the part of the State.

Finally, we find no merit to claimant's contention on her cross appeal that the Court of Claims fixing of total damages at $522,318.35 was inadequate.

Judgment modified, on the law and the facts, without costs, by reducing the amount thereof in favor of claimant to $208,927.34, and, as so modified, affirmed. Mahoney, P. J., Casey and Levine, JJ., concur.

Kane and Weiss, JJ., dissent and vote to reverse in a memorandum by Kane, J. Kane, J. (dissenting). We have been instructed by our Court of Appeals that, upon public policy considerations, CPLR 1411 should not be applied to assist one who seeks compensation for injuries sustained as a direct

result of his or her illegal conduct of a serious nature involving risk of physical harm *(Barker v Kallash,* 63 NY2d 19, 28-29).

In our view, operating a motor vehicle on the public highway with a blood alcohol content of at least .14% in violation of Vehicle and Traffic Law § 1192 (3), a misdemeanor, and under some circumstances a felony, is "illegal conduct of a serious nature involving risk of physical harm" *(supra,* at p 28). The facts of this case demonstrate the efficacy of this view, for the conduct of claimant in the operation of her vehicle exposes the public to a hazard equal to that of the activity of the 15-year-old plaintiff in *Barker.* Furthermore, the "serious nature" of the problem of the intoxicated driver has been recognized by the Governor and the Legislature and has precipitated considerable legislative activity *(see,* L 1981, ch 910; Governor's mem, 1981 NY Legis Ann, at 479).

The case of *Humphrey v State of New York* (60 NY2d 742, *affg* 90 AD2d 901), decided by this court and affirmed by the Court of Appeals, should not produce a contrary result. The court's decision in that case, prior to its decision in *Barker,* addressed the issue of intoxication as a supervening cause for the claimant's injuries and that decision was limited to the consideration of common-law principles of negligence and proximate cause based upon affirmed findings of fact in this court, thus limiting broader review in the Court of Appeals. Accordingly, for the reasons stated, and notwithstanding the reference to *Humphrey* in the decision in *Barker,* we would reverse the judgment and dismiss the claim.